# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONION DIVISION

| | |
|---|---|
| Danny Cantu, *on behalf of himself and all others similarly situated,* | Civil Action 5:19-cv-418 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| General Information Solutions, LLC, | |
| Defendant. | |

Plaintiff, Danny Cantu, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1. This consumer class action is brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA") against General Information Solutions, LLC ("GIS"), a consumer reporting agency that routinely prepares background reports that contain records of arrest that pre-date the report by more than seven years—a blatant violation of one of the FCRA's core employment screening restrictions.

2. As Defendant's practices were routine and systematic, Plaintiff asserts claims for damages on behalf of himself and a class of similarly situated individuals on whom Defendant furnished a consumer report.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S. Ct. 740, 751-53 (2012).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Plaintiff resides in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

5. Plaintiff is, and at all times mentioned herein was, an adult individual residing in San Antonio, Texas.

6. Defendant GIS is a Delaware limited liability company headquartered in Chapin, South Carolina.

7. GIS is a consumer reporting agency within the meaning of the FCRA: for monetary fees, it assembles information on consumers for the purpose of furnishing consumer reports to third parties, and it uses interstate commerce to prepare and furnish its reports. GIS provides these reports to employers for employment purposes, including for use in taking adverse employment action against employees, such as employment termination, withdrawing employment offers, not making employment offers, or not promoting employees.

## THE FCRA

8. The FCRA was enacted to ensure that consumer reporting agencies report information in a manner that is "fair and equitable to the consumer," and "with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

9. The FCRA prohibits, *inter alia,* the reporting of arrest and other law enforcement records that predate the report by more than seven years, unless those records are a record of conviction. Specifically, a consumer reporting agency may not report:

> (2) Civil suits, civil judgments, and records of arrest that, from date of entry, antedate the report by more than seven years or until the governing statute of limitations has expired, whichever is the longer period.

\* \* \* \*

>(5) Any other adverse item of information, other than records of convictions of crimes which antedates the report by more than seven years.

15 U.S.C. § 1681c(a)(2) & (5).

10. The FCRA also requires that when consumer reporting agencies prepare a report, they must "follow reasonable procedures to assure maximum possible accuracy of the information" contained in consumer reports. 15 U.S.C. § 1681e(b).

## ALLEGATIONS APPLICABLE TO PLAINTIFF

11. On February 4, 2019 Plaintiff applied for a job as a Recovery Specialist with Charter Communications ("Charter").

12. The job is based in San Antonio, Texas

13. On February 15, 2019, Charter interviewed Plaintiff for the Recovery Specialist position.

14. As part of the application process, on February 16, 2019 Charter requested a confidential background report regarding Plaintiff from GIS.

15. Thereafter, Charter offered the Recovery Specialist position to Plaintiff and provided him with a start date of March 11, 2019.

16. On or about March 13, 2019, GIS provided a copy of the report (the "Background Report") to Charter.

17. Charter procured the Background Report on Plaintiff as part of its standard hiring process. Charter did not procure Plaintiff's report or the reports of other class members in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any suspected violation of preexisting written policies of the employer.

18. In violation of 15 U.S.C. § 1681c(2) and (5), the Background Report generated by GIS regarding Plaintiff includes records of arrest and other adverse items of information that predate the report by more than seven years.

19. Specifically, GIS's report lists a "Misdemeanor" with a "Disposition" of "GUILTY"; an "Offense Date" of July 5, 1997; a "File Date" of May 14, 1998 and a "Disposition Date" of July 21, 1999.

20. However, Plaintiff was not actually convicted of the referenced misdemeanor and there was no disposition; instead, the Plaintiff entered a plea of nolo contedere and an adjudication of guilt was explicitly withheld and not entered against the Plaintiff.

21. Nonetheless, GIS reported the misdemeanor with an incorrect "GUILTY" disposition from more than 7 years ago on the Background Report.

22. As a direct result of the outdated criminal history contained on the Background Reporter, GIS rescinded the job offer from Plaintiff.

23. Specifically, on March 21, 2019, after GIS provided Charter with a copy of the Background Report, Charter sent Plaintiff an email with the subject line "Charter Communications: Offer Rescinded" which stated, inter alia, "You are receiving this email as a formal notification that your job offer with Charter Communications has been rescinded because you have not passed Charter Communications' pre-employment screening process due to the Criminal Background Report."

24. Consumer reporting agencies cannot report "arrests" and any "other adverse item of information" beyond seven years. *See* 15 U.S.C. §§ 1681c(a)(2) and (5); *see also*, *e.g.*, *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688, 693 (E.D. Pa. 2008) (noting that "an arrest record 'may reasonably be expected to have[ ] an unfavorable bearing on a consumer's

eligibility or qualifications' for employment" and thus "information concerning the existence of outdated arrest records . . . falls squarely within subsection (a)(5).").

25. Notwithstanding this clear statutory directive, GIS routinely reports outdated arrest records and adverse information concerning the existence of outdated arrest records that antedate the report by more than seven years.

26. GIS's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance.

27. It is standard practice for consumer reporting agencies to write filters and search algorithms that are "supposed to filter out obsolete credit information and credit information that doesn't belong to [consumers]." *See* https://www.consumeradvocates.org/for-consumers/credit-reporting (last visited Apr. 16, 2019).

28. GIS, consistent with standard industry practices, could have written an algorithm or filter to ensure that all of its reports would exclude non-conviction criminal dispositions older than seven years. *See In the Matter of General Information Services, Inc., and e-Backgroundchecks.com, Inc.*, No. 2015-CFPB-0028, ¶¶ 25-26 (Oct. 29, 2015) (noting that *GIS* "possess[ed] certain proprietary software that identifies discrepancies in data across multiple traditional criminal history reports." "For example, this software could identify a record that was previously suppressed from a report because it had been dismissed or expunged and prevent it from appearing on a future report").[1]

29. It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See*

---

[1] A copy of the Consent Order is available at https://files.consumerfinance.gov/f/201510_cfpb_consent-order_general-information-service-inc.pdf (last visited Apr. 16, 2019).

*Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). By failing to utilize a purge date for outdated information, GIS's practices and procedures fall far below industry standards and constitute recklessness.

30.     GIS failed to implement the above-referenced algorithms and purge dates to avoid reporting outdated reports of arrest and other adverse information, despite the fact that it easily could have done so.

31.     GIS knew its conduct was illegal but chose to continue to violate the law in order to avoid the costs of compliance.

32.     GIS has negligently and willfully violated 15 U.S.C. § 1681c(a) by routinely including criminal charges in the background reports it generates which occurred more than seven years before the report was generated and did not result in convictions.

33.     As a result of Defendant's conduct, job applicants, such as Plaintiff, appear to be worse job candidates than they would be if GIS only reported information it is allowed to report under the law. GIS's inclusion of this illegal information has caused Plaintiff and members of the Class to suffer concrete injuries in the form of wage loss, loss of benefits, delay in employment, emotional distress and/or other adverse employment action.

34.     Indeed, after GIS provided Charter and Plaintiff with a copy of the Background Report containing outdated non-conviction criminal history, Plaintiff disputed the Background Report with GIS.  While he was ultimately offered a job, he suffered from lost wages during the weeks-long period between when Charter initially rescinded the job offer due to the Background Report until the date the job was re-offered to Plaintiff.

## CLASS ACTION ALLEGATIONS

### A. The Class

35. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated.

36. Plaintiff represents, and is a member of the following class (the "Class"):

**All natural persons who were the subject of a background report prepared by Defendant and whose report contains one or more items of criminal information which are non-convictions, where such information antedates the report by more than seven years. The Class includes all individuals whose report was issued at any time dating from five years prior to the filing of this matter through the date of final judgment in this action.**

37. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

### B. Numerosity

38. The members of the Class are believed to be so numerous that joinder of all members is impracticable.

39. Defendant is a large company that has run thousands of consumer reports for employment purposes in the past five years. Because Defendant includes outdated non-conviction information on reports as a matter of course, the class will consist of hundreds, if not thousands, of members.

40. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## C. Common Questions of Law and Fact

41. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant violated the FCRA's prohibition on reporting arrests and other non-conviction criminal adverse information that antedate the date the background report was prepared by more than seven years;

   b. Whether Defendant's conduct was willful under FCRA;

   c. The appropriateness and proper measure of statutory damages; and

   d. Whether Defendant should be enjoined from such conduct in the future.

42. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant systematically prepared reports containing reports of arrest and other non-conviction criminal adverse information that antedate the date the background report was prepared by more than seven years, then Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## D. Typicality

43. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## E. Protecting the Interests of the Class Members

44. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

F.  **Proceeding Via Class Action is Superior and Advisable**

45. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

46. Absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive and, therefore, would have no effective remedy at law.

47. The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action.

48. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the court and the litigants and promotes consistency and efficiency of adjudication.

49. Prosecution of separate actions could result in inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant and other consumer reporting agencies.  Conversely, adjudications with respect to individual class members would be dispositive of the interest of all other class members.

50. The amount of money at issue is such that proceeding by way of a class action is the only economical and sensible manner in which to vindicate the injuries sustained by Plaintiff and the other members of the Class.

## COUNT I
## VIOLATION OF THE FCRA, 15 U.S.C. § 1681c(a)

51. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

52. GIS is a consumer reporting agency as defined by the FCRA, and the employment-related background reports it generates are subject to the restrictions set forth in 15 U.S.C. § 1681c(a).

53. GIS routinely and systematically violated 15 U.S.C. § 1681c(a) by including reports of arrest and other non-conviction criminal adverse information that predates the report by more than seven years in its reports.

54. The foregoing violations were negligent and/or willful. GIS acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681c. GIS's willful conduct is reflected by, *inter alia*, the following:

   a. GIS knew or had reason to know that its conduct was inconsistent with the FCRA given that, *inter alia*, it entered into a consent order with the Consumer Financial Protection Bureau more than three years ago regarding similar allegations;[2] and

   b. GIS's violations of the FCRA were repeated and systematic.

55. Plaintiff and the Class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

56. Plaintiff and the Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against Defendant:

1. Declaring that Defendant violated the FCRA;

---

[2] *See* https://files.consumerfinance.gov/f/201510_cfpb_consent-order_general-information-service-inc.pdf

2. Declaring that Defendant acted willfully, in knowing or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

3. Awarding actual damages;

4. Awarding statutory damages and punitive damages as provided by the FCRA;

5. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

6. Such other and further relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: April 23, 2019

             Respectfully submitted,

             By   /s/ Sergei Lemberg

             Sergei Lemberg, Esq.
             LEMBERG LAW, L.L.C.
             43 Danbury Road, 3rd Floor
             Wilton, CT 06897
             Telephone: (203) 653-2250
             Facsimile:  (203) 653-3424
             *Attorneys for Plaintiff*